# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Angel David Smiley,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-12-2525-PHX-FJM (JFM)<br><br>**Report & Recommendation On Petition<br>For Writ Of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Buckeye, Arizona, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 25, 2013 (Doc. 6).  On September 30, 2013 Respondents filed their Response (Doc. 20).   Respondents filed a Supplemental Answer on February 20, 2014 (Doc. 24), a Supplement on May 6, 2014 (Doc. 30), and a Second Supplemental Answer on September 19, 2014 (Doc. 36).  Petitioner filed a Reply on October 22, 2013 (Doc. 21), a Supplemental Reply on March 21, 2014 (Doc. 28), and a Second Supplemental Reply on October 17, 2014 (Doc. 39).

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

/ /

/ /

/ /

1

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND AND PROCEEDINGS AT TRIAL

On January 5, 2007, Petitioner and three others were indicted in Maricopa County Superior Court on charges of First Degree Murder, Attempted Armed Robbery, Burglary, Conspiracy to Commit Armed Robbery, and two counts of Aggravated Assault.  (Exhibit A, Indictment.)[1]  The charges arose out of an armed robbery of a residence, with the victim being shot several times.  (Exhibit B, Mem.Dec. at 2-4.) After rejecting a plea offer (*id.* at 5), Petitioner proceeded to a joint jury trial with the co-defendants. (*Id.* at 4.)

Petitioner was eventually acquitted on the aggravated assault charges, and was convicted on the other charges.  (Exhibit B, Mem. Dec. at 4.)  Petitioner was sentenced to his natural life in prison on the murder charge, and a consecutive term in prison of concurrent sentences of 10 years for attempted robbery and 15 years each for burglary and the conspiracy.  (*Id.* at 5.)

### B.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal.  Counsel was appointed and was unable to find an appealable issue, and filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) and related statue authorities.  (Supp., Doc. 30, Exhibit, Opening Brief.)  Petitioner was granted leave to file a supplemental brief, but failed to do so.  (Exhibit B, Mem.Dec. at 5.)  The Arizona Court of Appeals reviewed the case for "reversible error," found none, and affirmed Petitioner's convictions and sentences.  (*Id.* at 6-7.)  Petitioner was advised of his ability to file a motion for reconsideration or to seek review from the Arizona Supreme Court in a petition for review.  (*Id.* at 7.)

Petitioner did not seek further review on direct appeal.  (Amend. Petition, Doc. 6 at 3; Answer, Doc. 20 at 4-5.)

---

[1] Exhibits to the Answer, Doc. 20, are referenced herein as "Exhibit ___."  Exhibits to the Second Supplemental Answer, Doc. 36, are referenced herein as "Exhibit S-___."

### C.  PROCEEDINGS ON POST-CONVICTION RELIEF

On November 17, 2009, Petitioner filed a Notice of Post-Conviction Relief (Exhibit D).  He ultimately filed a *pro per* Petition for Post-Conviction Relief, arguing that: (1) trial counsel was ineffective for failing to challenge the introduction of his statement to police, failing to maintain adequate communication with Petitioner, failure to subject the prosecution's case to meaningful adversarial testing, failure to prepare an opening argument or defense strategy other than lack of proof of premeditation, failure to call witnesses, failing to impeach witnesses with their statements to police or criminal convictions, failing to adequately challenge the sealing of a co-defendants' statement, failing to object to the disclosure of his "free-talk" with the prosecution, failing to adequately advise Petitioner on testifying and failing to adequately advise Petition in rejecting the plea offer; (2) his right to due process was violated when the trial court failed to strike the entire jury venire after racist and derogatory comments by one potential juror and after jurors saw an attorney carrying clothes and commented that it indicated the defendants were incarcreated; and (3) his right to due process was violated when his motion to sever was denied.  On September 27, 2010 the PCR court found that the petition failed to show a colorable claim for post-conviction relief "for the reason given in the State's Response," and summarily dismissed it.  (Exhibit E, M.E. 9/27/10.)

Petitioner then filed a Petition for Review (Exhibit G), arguing claims of juror misconduct, failure to sever, and insufficient evidence of premeditation.  The Arizona Court of Appeals summarily denied review.  (Exhibit H, Order 8/17/12.)

### D.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his original Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 27, 2012 (Doc. 1).  That petition was dismissed with leave to amend.  (Order 1/31/13, Doc. 5.)  Petitioner then filed his Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 25, 2013 (Doc. 6).  Petitioner's Petition asserts the following five grounds

for relief:

1. Petitioner's Fifth Amendment due process rights were violated by the failure to sever his trial from his co-defendants[2];

2. Petitioner's due process and fair trial rights were violated by juror misconduct and racist statements;

3. Petitioner's appellate counsel was ineffective, in violation of Petitioner's due process rights;

4. Petitioner's due process, equal protection, and fair trial rights were violated when jurors observed and commented on attorney carrying in clothing and speculating that it meant a defendant was in custody[3];

5. Petitioner's due process rights were violated when: (a) he was convicted on insufficient evidence to prove premeditation, and (b) Petitioner's exculpatory statements to police were redacted.[4]

(*See* Order 5/17/13 at 2.)

**Response** - On September 30, 2013, Respondents filed their Limited Response ("Answer") (Doc. 20). Respondents argue Ground One does not present a cognizable federal claim. Respondents further argue that Grounds 1, 2, and 4 were only presented as state law claims to the Arizona Court of Appeals, and are now procedurally defaulted. Respondents argue that Grounds 3 and 5 were raised for the first time in his PCR Petition

---

[2] The Service Order construed this claim as asserting a due process violation by the Arizona Court of Appeals. Upon review in light of the record now available, it is apparent to the undersigned that this claim is intended to challenge the trial court's failure to sever, and that the extensive references to the appellate court's proceedings were merely part of the procedural history on that claim. Indeed, Petitioner addresses this claim in his Reply as a claim based on "Severance." (Doc. 21 at 2.) Respondents similarly construe the claim. (Answer, Doc. 20 at 13.)

[3] The Court's Service Order construed this as a claim that Petitioner's rights "were violated during his appeal." Upon review in light of the record now available, it is apparent to the undersigned that this claim is intended to challenge the denial of the motion for mistrial based upon the juror's discussion of seeing an attorney with clothing, and that the extensive references to the appellate court's proceedings were merely part of the procedural history on that claim. Respondents similarly construe the claim. (Answer, Doc. 20 at 13.) Petitioner does not object to Respondents' characterization.

[4] The Service Order referenced only subpart (a) of this claim. (Order 5/17/13, Doc. 7 at 2.) Respondents recognize and address both parts, asserting they are both procedurally defaulted. (Answer, Doc. 20 at 15.) Upon review in light of the record now available, it is apparent to the undersigned that Petitioner intends to assert both parts.

for Review, were thus not fairly presented, and are now procedurally defaulted.

**Reply** - On October 22, 2013, Petitioner filed a Reply (Doc. 21).  Petitioner argues that: (1) the federal courts have recognized rights to sever (*id.* at 2, *et seq.*); (2) he was not required to present his claims to the Arizona Supreme Court, that he has diligently sought to raise his claims (*id.* at 6 *et seq.*); (3) any deficiency in his presentation to the state courts was the result of his untrained, *pro se* status (*id.* at 9); and (4) his claims are meritorious (*id.* at 10, *et seq.*).

**First Order to Supplement Briefs** – On January 30, 2014, the Court noted that the Arizona Court of Appeals had reviewed the record for error following the *Anders* brief by appellate counsel, and directed the parties to supplement their briefs to address whether this resulted in actual consideration of any of Petitioner's claims.  (Doc. 23.)

**Supplemental Answer** – On February 20, 2014, Respondents filed their Supplemental Answer (Doc. 24).  Respondents argue that review under *Anders* did not result in exhaustion, citing a series of Ninth Circuit opinions addressing review of capital cases for "fundamental error" under a state mandated review.  Respondents further argue that under *State v. Thompson*, 229 Ariz. 43, 46, 270 P.3d 870, 873 (App. 2012), review under *Anders* results in a review for non-frivolous issues, and in the event the court finds any, it directs further briefing, and the absence of any such direction indicates the Arizona court did not find any issues to resolve on the merits.  Respondents further argue that *Anders* review does not result from any "fair presentation" of any issue for review.

**Supplemental Reply** – On March 21, 2014, Petitioner filed his Supplemental Rely (Doc. 28), arguing that the *Anders* review resulted in consideration of his claims, and thus the exhaustion of his state remedies.

**Supplements to Record** – In an Order filed April 30, 2014, (Doc. 29), the Court observed that the record contained an incomplete copy of Petitioner's Opening Brief on direct appeal (Exhibit C).  On May 6, 2014, Respondents supplemented the record to provide a complete copy.  (Doc. 30.)

**Second Order to Supplement Briefs** – In an Order filed July 29, 2014 (Doc. 31),

1  the Court indicated a tentative conclusion that Grounds Two and Four were fairly

2  presented in Petitioner's Petition for Post Conviction Relief (Exhibit E), and directed

3  Respondents to supplement their Answer to address the merits of these grounds.[5]

4      **Second Supplemental Answer** – On September 19, 2014, Respondents filed their

5  Second Supplemental Answer (Doc. 36), arguing that Grounds Two and Four are

6  without merit.

7      **Second Supplemental Reply** – On October 17, 2014, Petitioner filed his "Reply

8  to Respondents Second Supplemental Answer" (Second Supplemental Reply) (Doc. 39),

9  arguing the merits of Grounds Two and Four.

10

11  **III. APPLICATION OF LAW TO FACTS**

12  **A. STATE LAW CLAIMS**

13      Respondents argue that Petitioner's Ground One, challenging the failure to sever

14  his trial, is a state law claim and not cognizable on habeas review.

15      Petitioner summarizes his Ground One as claiming a right to sever "pursuant to

16  Rules 13.13(b) and 13.4 of the Arizona Rules of Criminal Procedure, as well as

17  Petitioner's Due Process Rights guaranteed him under the Fifth and Fourteenth

18  Amendments to the U.S. Constitution and Article 2, § 4 of the Arizona Constitution."

19  (Amend. Pet., Doc. 6 at "6.")

20      To the extent that petitioner is contending that the trial court should not have

21  denied his severance motion as a matter of state law (e.g. the Arizona Rules of Criminal

22  Procedure or the Arizona Constitution), his claim is not cognizable on federal habeas

23  review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)

24  ───────────────

25  [5] As discussed hereinafter, the undersigned has now concluded that these claims were disposed of by the state court by application of a procedural bar, *i.e.* waiver by failure to raise it on direct appeal.  That bar was not made explicit in the PCR court's order (Exhibit F, M.E. 9/27/10) but was incorporated from the PCR Response under the rubric of a finding that no colorable clams were presented for the reasons stated in that response.  The PCR Response raising the waiver bar was not provided to this Court until Respondent's Second Supplemental Answer (Doc. 36), and Respondents had not asserted that the claim was procedurally barred, but that it had not been raised in the state court's as a federal claim and thus was procedurally defaulted.

6

(reiterating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

However, the federal circuit courts have long recognized that a failure to sever can amount to a due process violation. *See e.g. Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991). Indeed, Petitioner argues that such occurred. Thus, barring procedural defenses, this Court is free to decide that portion of Petitioner's Ground One asserting a denial of due process under the U.S. Constitution.[6]

## B. EXHAUSTION AND PROCEDURAL DEFAULT

Respondents argue that Petitioner's state remedies on his federal claims were not properly exhausted and are now procedurally defaulted, and thus the claims are barred from federal habeas review.

### 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

**Fair Presentation** - A claim has been fairly presented to the state's highest court if petitioner has described **both** the operative facts and the federal legal theory on which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (emphasis added). While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor*, 404 U.S. 270, 277-78 (1971), it is not enough that all the facts necessary to support the federal claim were before the state courts. *Anderson v. Harless*,

---

[6] Although, as argued by Respondents (Answer, Doc. 20 at 7, n.5) the Court may be limited to applying U.S. Supreme Court law to the issue. *See* 28 U.S.C. § 2254(d)(1).

459 U.S. 4, 6 (1982)(*per curiam*).   Nor is it sufficient to make vague references to constitutional rights without delineating the source of those rights, or that a "somewhat similar state law claim was made."   *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).

**Proper Proceeding** - Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.   This is true even where alternative avenues of reviewing constitutional issues are still available in state court.   *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).   "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Effect of Life Sentence** - Here, Petitioner received a life sentence.   It is true that the *Swoopes* decision refers to there being no right of appeal to the Arizona Supreme Court "except in capital cases or when a life sentence is imposed." *Swoopes*, 196 F.3d at 1009.   The decision concludes that "except in habeas petitions in life-sentence or capital cases, claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.[7] *Id*. at 1010.

In reaching that decision, however, the Ninth Circuit was faced with a habeas petitioner whose appeal to the Arizona Court of Appeals was denied in 1988, prior to the

---

[7] In his Reply, Petitioner seems to stand *Swoopes* on its head by arguing that its reference to death and life sentence cases takes his life sentence case entirely outside the exhaustion requirement.   (Reply, Doc. 21 at 6, 8.)   If that is his intended argument, Petitioner simply misreads *Swoopes*.   The differentiation in *Swoopes* between death and life sentence cases and cases with other types of sentences was not whether exhaustion was required, but whether presentation of the claim in the Arizona Supreme Court was required, or presentation in the Arizona Court of Appeals was sufficient.

8

1989 amendments eliminating life-sentences from the exceptions to Arizona Court of Appeals jurisdiction. *See State v. Swoopes*, 155 Ariz. 432, 747 P.2d 593 (App. 1988). Similarly, the Ninth Circuit was required to draw on decisions applying the pre-1989 amendments law.  In *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989), the Arizona Supreme Court considered the review rights of a defendant whose appeal was denied in 1986.  *Sandon*, 161 Ariz. at 157, 777 P.2d at 220.  Although the *Sandon* court noted the adoption of the 1989 amendments in a footnote, they were not applying that law. *Id*. at 158 n. 1, 777 P.2d at 221 n.1.

Similarly, the decision in *State v. Shattuck*, 140 Ariz. 582, 684 P.2d 154 (1984), also relied on in *Swoopes*, predated the 1989 amendments.  Indeed, the only Arizona decision relied upon in *Swoopes* and made after the 1989 amendments was *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998).   *Moreno* did not, however rely upon Ariz.Rev.Stat. §§ 12-120.21 or 13-4031, or specifically discuss the death/life sentence limitation.  Rather, *Moreno* focused on the "nature and scope of discretionary review by petition for review,"  *Moreno*, 192 Ariz. at 134, 962 P.2d at 133, and was concerned with whether such discretionary review was an "appeal" within the meaning of the exceptions to Arizona's timeliness bar for claims not presented on "appeal" for good cause.

Moreover, the import of *Sandon* was the Arizona Supreme Court's apparent desire to stop the flood of "large numbers of prisoner petitions seeking to exhaust state remedies." *Sandon*, 161 Ariz. at 157, 777 P.2d at 220.   The *Sandon* court concluded that "'[o]nce the defendant has been given the appeal to which he has a right, state remedies have been exhausted." *Id*. at 158, 777 P.2d at 221, quoting *Shattuck*, 140 Ariz. at 585, 684 P.2d at 157.  Thus, their recitation of the death/life sentence limitation is not properly read as the limit of their holding, but as a reiteration of the pre-1989 holding of Shattuck.  Thus *Sandon* may only be reasonably read as an attempt by the Arizona Supreme Court to remove their discretionary review from the cycle of review required for exhaustion of state remedies.  While a given  respondent may desire to require its Arizona prisoner to file a petition for review with the Arizona Supreme Court, it is not

the respondents' desire, however, but that of the Arizona court that is controlling.

Finally, *Swoopes* itself did not hinge on any reading of Ariz.Rev.Stat. §§ 12-120.21 or 13-4031 themselves, but upon the question "whether Arizona has identified discretionary Supreme Court review 'as outside the standard review process and has plainly said that it need not be sought for purpose of exhaustion.' " *Swoopes*, 196 F.3d at 1010, quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 849 119 S.Ct. 1728, 1735 (1999). The only basis for identifying that discretionary review as being tied to death/life sentences was the language of *Shattuck* and *Sandon*, and their reliance upon the then applicable pre-1989 versions of Ariz.Rev.Stat. § § 12-120.21 and 13-4031.

Thus, until this issue is resolved by the Ninth Circuit, the Arizona District Courts are faced with either applying the exact language of *Swoopes*, or applying the principle of *Swoopes* to the facts as they exist in this case.  The latter holds truer to the function of a trial court in attempting to apply appellate court precedent.

> Using the techniques developed at common law, a court confronted with apparently controlling authority must parse the precedent in light of the facts presented and the rule announced. Insofar as there may be factual differences between the current case and the earlier one, the court must determine whether those differences are material to the application of the rule or allow the precedent to be distinguished on a principled basis.

*Hart v. Massanari*, 266 F.3d 1155, 1172 (9th Cir. 2001).

In *O'Sullivan*, the Supreme Court held that " 'the creation of a discretionary review system does not, without more, make review' in a state supreme court 'unavailable.'" *Swoopes*, 196 F.3d at 1009, quoting *O'Sullivan*, 119 S.Ct. at 1734.  The reasoning of *Swoopes* is based upon the determination that the Arizona Supreme Court has instructed that discretionary review by that court is not part of the standard review process in Arizona and that it need not be sought for the purposes of exhaustion, and the Ninth Circuit's conclusion that this instruction is the something "more" referred to in *O'Sullivan*.  *Swoopes*, 196 F.3d at 1010.

Under the version of Ariz.Rev.Stat. § 12-120.21 applicable to Petitioner, review by the Arizona Supreme Court is discretionary.  Thus, that review is "unavailable"

10

within the meaning of *Swoopes* and *O'Sullivan*, and utilization of that review is not necessary for Petitioner to exhaust his state remedies, despite his life sentence.   *See Crowell v. Knowles*, 483 F. Supp. 2d 925 (D. Ariz. 2007) (reaching same conclusion).

## 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 20 at 11-12.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002)

(quoting Ariz.R.Crim.P. 32.2, Comments).  For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right."  Id.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally."  *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.  Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance.  *Id*.

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).  That time has long since passed.

Exceptions - Rules 32.2 and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  See Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.  The rule defines the excepted claims as follows:

        d. The person is being held in custody after the sentence imposed has expired;

        e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:

        (1) The newly discovered material facts were discovered after the trial.

        (2) The defendant exercised due diligence in securing the newly discovered material facts.

        (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.

        f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or

        g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or

        h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief. Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding. Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

### 3.  Procedural Bar on Independent and Adequate State Grounds

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds.  "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin*, - - - U.S. - - -, 131 S.Ct. 1120, 1127 (2011).

To bar habeas relief, the state court must have actually relied upon the procedural bar to dispose of the case.  *Harris v. Reed*, 489 U.S. 255, 261-262 (1989).  However, "[a]bsent a presumption, 'federal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on independent and adequate state grounds.' " *Hunter v. Aispuro*, 982 F.2d 344, 347 (9th Cir. 1992) (quoting *Coleman v. Thompson*, 501 U.S. 722, 736 (1991)).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.


### 4. Application to Petitioner's Claims

Here, Petitioner has made two forays into the Arizona Court of Appeals: once on direct appeal, and once in his Petition for Review in his PCR proceeding.

/ /

/ /

### a.  Review on Direct Appeal

On direct appeal, Petitioner did not raise any claims.   Rather, the Arizona appellate court was faced with an opening brief, pursuant to *Anders* asserting no claims. (*See* Supplement, Doc. 30, Exhibit, Opening Brief.)

However, a state court's actual consideration of a claim satisfies exhaustion. *See Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"); *see also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's *sua sponte* consideration of an issue satisfies exhaustion).

Here, the Arizona Court of Appeals did not expressly consider any federal claims on direct appeal.  However, it did expressly search the record for error[8] pursuant to *Anders v. California,* 386 U.S. 738 (1967), and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969).  (Exhibit B, Mem. Dec. at 1-2.)  *Anders* provides that an appellate court, faced with appointed counsel's professed inability to find an issue for appeal, should proceed "after a full examination of all the proceedings, to decide whether the case is wholly frivolous."  *Anders*, 386 U.S. at 744.[9]

The Ninth Circuit has held that the federal habeas petitioner has exhausted his state court remedies when the state court can be presumed to have considered his constitutional claims as part of a comprehensive review for error, even if the petitioner failed to raise the claims before the state court.   *Beam v. Paskett*, 3 F.3d 1301 (9th Cir.1993), *cert. denied*, 114 S.Ct. 1631 (1994).

Other courts have been reticent to follow *Beam* in other contexts.  *See  Martinez-*

---

[8] The Arizona court alternatively described its task as a search for "fundamental error" (Exhibit B at 2 ("Counsel now asks this court to search the record for fundamental error")) and as a search for "reversible error" (*id.* at 6).  As discussed hereinafter, *Anders* does not prescribe a search limited to "fundamental error."

[9] In *Smith v. Robbins*, the Court clarified that the process outlined in *Anders* was merely one method of preserving the right to counsel of indigent defendants when their appellate counsel was unable to find an issue for appeal, and that the states had the freedom to construct alternative means.  528 U.S. 259 (2000).  What is relevant here is not whether the *Anders* process was mandatory, but whether, because it was followed, it resulted in exhaustion of all Petitioner's federal claims.

15

*Villareal v. Lewis*, 80 F.3d 1301 (9th Cir. 1996), *cert. denied*, 519 U.S. 1030 (1996) (refusing to extend *Beam* to Arizona's statutory review for fundamental error in death penalty case); *Michael Poland v. Stewart*, 117 F.3d 1094 (9th Cir. 1997) (same); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) (same); *Hoffman v. Arave*, 973 F. Supp. 1152, 1158 at Note 1 (D. Idaho 1997) (commenting that *Beam* was "wrongly decided"); *Sechrest v. Ignacio*, 943 F.Supp. 1245, 1249-50 (D. Nevada 1996) (characterizing the discussion in *Beam* on the "exhaustion" effect of the state mandatory review statute as *obiter dicta*); *Banks v. Horn*, 49 F.Supp.2d 400, 407  (M.D. Penn. 1999) (declining to apply *Beam*, and rejecting "the notion that [a reviewing court] is responsible for detecting all errors of constitutional magnitude on direct appeal"); *Bennett v. Angelone*, 92 F.3d 1336 (4th Cir. 1996) (discussing *Beam* analysis, but avoiding by denying claims on the merits); *Wortazeck v. Lewis*, 863 F.Supp. 1079, 1095 (D. Arizona 1994), *affirmed on other grounds* 97 F.3d 329, *cert. denied* 520 U.S. 1173, *reh'g denied* 520 U.S. 1260 (distinguishing the Idaho statute in *Beam* from Ariz. R. Crim. P. Rule 31.2).

The undersigned is currently aware of only one published decision considering the exhaustion effect of a review for error pursuant to *Anders*.  In *McCoy v. Newsome*, 626 F.Supp. 374 (M.D. Georgia 1986), the appellate counsel filed a motion to withdraw as counsel pursuant to *Anders*.  The motion was granted and the conviction affirmed.  The petitioner subsequently sought habeas relief on a laundry list of issues, and the state moved to dismiss for failure to exhaust.  After finding that the state appellate court had conducted a review of the record for error, the *McCoy* court concluded: "The state courts have thus had the opportunity to review all petitioner's claims arising from his trial." *McCoy*, 626 F.Supp. at 376.  *See McCoy v. Newsome*, 953 F.2d 1252, 1257 (11th Cir. 1992) ("the district court found that grounds two through eleven were exhausted when the Georgia Court of Appeals conducted an independent examination of the trial record for any reversible error pursuant to the *Anders* petition").  In subsequent proceedings on the petition, however, the district court apparently reversed its position and held at least some of the claims procedurally barred.  *See McCoy v. Newsome*, 953 F.2d 1252, 1257-

58 (11th Cir. 1992).

Based upon the foregoing, the undersigned cannot say there is clear precedent on the issue of whether a state appellate court review for fundamental error pursuant to *Anders* would result in exhaustion of all constitutional claims.

Nonetheless, the undersigned finds *Beam* distinguishable and that policy considerations argue against extending *Beam* beyond its specific facts.

*Beam* Review Distinguishable from *Anders* Review - In *Poland v. Stewart*, the Ninth Circuit distinguished *Beam* in an Arizona case involving a review for fundamental error in capital cases.  117 F.3d 1094 (9th Cir. 1997).  The *Poland* court observed that *Beam* involved an Idaho state which required the state supreme court to review capital cases "to determine if certain errors were present," and the Ninth Circuit had simply "presumed that the Idaho court had performed its statutory duties," and considered the specified issues. *Id.* at 1106.  As a result, "claimed errors coming within the Idaho statutory command were not procedurally barred though not raised in state court."  *Id.* The *Poland* court observed that Arizona's mandate for review of capital cases for "fundamental error" did not specify any particular claims.

Similarly, here, the Arizona Court of Appeals had no duty to review for "certain errors."  Rather, it was simply pursuaing an open-ended mandate to "decide whether the case is wholly frivolous." *Anders*, 386 U.S. at 744.  *See also State v. Leon*, 104 Ariz. 297, 451 P.3d 878 (1969) (applying *Anders*).

*Beam* Review Distinguishable from "Fundamental Error" Review - Respondents and apparently some courts have applied a short hand of describing review under *Anders* and *Leon* as a search for "fundamental error."  (*See e.g.* Supp. Resp., Doc. 24 at 3.) Indeed, Petitioner's appellate counsel's *Anders* brief beseeched the appellate court to "search the record for fundamental error."  (Supplement, Doc. 30, Exhibit, Opening Brief at 33.) If such references could be found to be a designation of specific errors to be examined, then perhaps *Beam* would mandate a finding of actual consideration and thus exhaustion. However, neither *Anders* nor *Leon* used such a term nor employed any

limitation on the type of error for which a reviewing court should search.

It appears that this nomenclature derives in part from a now-repealed statute, and the Arizona limitation on errors reviewable when no objection has been raised at trial.

The former was Ariz. Rev. Stat. § 13-4035 which required the Arizona Court of Appeals to search every appellate record for "fundamental error." That requirement was repealed in 1995. *See State v. Smith*, 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996). Perhaps the confusion resulted from the tendency of the Arizona Courts to reference review under *Anders/Leon* and § 13-4035 in a single cryptic determination with a finding that there was no "fundamental error." *See e.g. State v. Perea*, 142 Ariz. 352, 359, 690 P.2d 71, 78 (1984).

The latter source for the term "fundamental error" is the waiver limitation applied by the Arizona appellate courts to objections not raised at trial. *See State v. King*, 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988). *King* involved the consideration of a raised claim of instructional error which had not been asserted at trial. Finding that a failure to object resulted in a waiver, the court found its review of the claim limited to a search for "fundamental error," which it defined:

> Error is fundamental when it reaches " 'the foundation of the case or takes from the defendant a right essential to his defense,' " or is an " 'error of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial.' "

*King*, 158 Ariz. at 424, 763 P.2d at 244 (citations omitted). Thus, *King* was not a limitation on *Anders* review, and would have no application where, for example, an objection had been raised at trial but appellate counsel had not argued the point and instead filed an *Anders* brief.

The undersigned is not convinced that no Arizona court or litigant has ever conflated the *King* standard with the contours of review mandated under *Anders* and *Leon*. Nor is the undersigned convinced that the Arizona Court of Appeals did not do so in this instance.[10]

---

[10]  The undersigned observes that although Petitioner complains that counsel was deficient in filing an *Anders* brief (Amend. Petition, Doc. 6 at 8, *et seq.*), he asserts no

What cannot be said, however, is that even had the Arizona Court of Appeals believed its review was limited to "fundamental error," that such review was sufficiently prescribed and narrow as to create a presumption that the state court actually considered any specific constitutional claims. To the contrary, under the *King* formulation, such review is not a search for specific types of claims or errors, but of errors with a certain level of prejudicial impact. This leaves no basis for this Court to conclude that Petitioner's state remedies were exhausted by the Arizona court's *Anders* review under a standard comparable to that applied in *Beam*.

Indeed, the Ninth Circuit has repeatedly rejected any argument that the open ended review for "fundamental error" undertaken by the Arizona Courts results in exhaustion. "Where the parties did not mention an issue in their briefs and where the court did not mention it was considering that issue sua sponte, there is no evidence that the appellate court actually considered the issue, regardless of its duty to review for fundamental error, and the issue cannot be deemed exhausted." *Moormann v. Schriro*, 426 F.3d 1044, 1057 (9th Cir. 2005). *See also Poland v. Stewart*, 117 F.3d 1094, 1105-1106 (9th Cir. 1997).[11]

Thus, the reference to "fundamental error" in the denial of Petitioner's direct appeal cannot be presumed to be the application of a specified list of errors to be examined (such as that in *Beam*), but rather as a recognition of a limitation on the types of error on which the court could grant relief if an objection had not been raised at trial.

Thus, whether the Arizona Court of Appeals properly conducted a full review for errors under *Anders*, or improperly conducted a review limited to "fundamental error,"

---

claim in this proceeding that he was denied equal protection under *Anders* as a result of an improperly limited review of his direct appeal by the Arizona Court of Appeals.

[11] Respondents and the Ninth Circuit in *Moorman,* and *Poland*, point to *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996) for the proposition that Arizona's "fundamental error" review does not result in exhaustion. However, *Martinez-Villareal* did not address a question of proper exhaustion, but whether such review resulted in preclusion under Arizona law so as to justify the application of Arizona's preclusion bar. Thus, *Martinez-Villareal* dealt not with federal exhaustion law, but an Arizona procedural bar.

this Court must find that Petitioner's state remedies were not exhausted simply by the review undertaken by the Arizona Court of Appeals.

Policy Considerations  - It is true that the exhaustion requirements have grown out of the principles of comity and Federalism.  *Edwards v. Carpenter*, 529 U.S. 446 (2000). Their goal is to give state courts "the opportunity to correct alleged violations of prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365 (1995).     It is even arguable that a review for error by a state court which presumptively includes a consideration of all possible constitutional claims would satisfy this principle of deference.

Such an approach, however, would effectively gut the principles of exhaustion for many of the habeas cases filed.  For example, any matter in which counsel had filed an *Anders* brief on appeal would automatically be deemed to have every conceivable constitutional claim preserved for habeas purposes.  Indeed, the potentially sweeping effect of the *Beam* decision was recognized in Griego, *The "Great Writ" May Once Again Deliver Justice to the Most Deserving Prisoners: An Analysis of Arizona Rule of Criminal Procedure Rule 31.2(b) in Light of Beam v. Paskett*, 39 Ariz. L. Rev. 311 (1997).  Applying *Beam*'s analysis to *Anders* reviews would create the anomaly that a defendant whose appointed appellate counsel found some arguable claim, thereby avoiding an *Anders* review for error, would be precluded from raising all other claims in a habeas petition; while the defendant whose appointed appellate counsel could not find an arguable claim would be permitted free range in the federal courts.

Such a broad sweeping change the undersigned is not prepared to recommend, nor forge.  Rather, it seems that the general rule that the defendant "apprise the state court of his [constitutional] claim" should be the touchstone.  *Duncan*, 513 U.S. at 366.

Thus, the undersigned concludes that Petitioner's claims were not exhausted simply by virtue of the review for error pursuant to *Anders*.

Actual Consideration - Of course, if the Arizona Court of Appeals actually identified and addressed any of Petitioner's federal claims in the course of their review

under *Anders*, that would have resulted in exhaustion of his state remedies. *Cf.*
*Moormann*, 426 F.3d at 1057  (no exhaustion if "the court did not mention it was
considering that issue *sua sponte*, [and] there is no evidence that the appellate court
actually considered the issue").

### b.  Application to Individual Claims

**(1) Ground One - Severance** - In Ground One of his Petition, Petitioner argues
that his due process rights were violated by the failure to sever his trial from his co-
defendants.  In support of this Ground, Petitioner argues that the trial court denied him
due process when it failed to sever his trial from that of his co-defendants, because of the
defendants' mutually exclusive ("pointing the finger at each other") defenses.

Petitioner raised a similar claim in his Petition for Review to the Arizona Court of
Appeals on his PCR petition.  (Exhibit G at 7 *et seq*.)  Petitioner argued that the trial
court abused its discretion in denying severance, citing the Arizona Rules of Criminal
Procedure, *State v. Roper*, 140 Ariz. 459, 682 P.2d at 464 (App. 1994), and *State v.
Mauro*, 149 Ariz. 24, 716 P.2d 393 (1986), *rev'd on other grounds* 481 U.S. 520 (1987).
(Exhibit G, PFR at 8.)  Petitioner made no reference to any federal authorities or
constitutional provisions in asserting this claim.

In his Reply, Petitioner argues that he quoted *United States v. Lutz*, 621 F.2d 940,
946 (9th Cir. 1980) in support of this claim.  (Reply, Doc. 21 at 2.)  However, Petitioner
provides no reference to where he quoted that case.  The undersigned has found no
reference to this case in his Petition for Review.  Moreover, *Lutz* did not resolve any
constitutional issues, but merely applied the law applicable in federal courts for
determining when a judge should grant a severance.  Thus, a reference to *Lutz* would not
have been fair notice of a constitutional claim applicable to the states, but simply a
reference to a persuasive federal case.

Of course, Petitioner did cite various state case.  It is true that "a citation to a state
case analyzing a federal constitutional issue serves the same purpose as a citation to a

federal case analyzing such an issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003). Here, however, none of the state cases cited by Petitioner in his state petition for review were founded upon a federal constitutional issue. *See Roper*, 140 Ariz. at 461-463, 682 P.2d at 466-468 (applying state law on severance); *Mauro*, 149 Ariz. at 27-28, 716 P.2d at 396-397 (same).

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals did observe that Petitioner was tried jointly with his co-defendants. (Exhibit B, Mem. Dec. at 4.) However, the court undertook no analysis of the propriety of the joint trial. (*See generally* Exhibit B, Mem. Dec.) Petitioner points to no evidence that the Arizona Court of Appeals actually considered the due process ramifications of the failure to sever the trials.

Accordingly, the undersigned finds that Petitioner did not fairly present the federal due process claim raised in Ground One to the Arizona Court of Appeals in his PCR Petition for Review, and the Arizona Court of Appeals did not consider the issue *sua sponte* on direct appeal. Consequently, this claim was not properly exhausted, and is now procedurally defaulted.

**(2) Ground Two and Four – Juror Bias** – In his Ground Two, Petitioner argues that his due process and fair trial rights were violated as a result of juror bias or misconduct. In particular, in Ground Two Petitioner argues that during jury selection various panel members made references to the races of the defendants, *e.g.* "three blacks and one Hispanic," "they must be guilty because here they are," etc. (Amend. Petition, Doc. 6 at 48-49.) In his Ground Four he argues that jurors had made comments about seeing an attorney carrying in clothing, and opining that it meant one of the defendants' was in custody, and that the trial court failed to acknowledge the involvement of each of the affected jurors, and wrongly denied a motion for mistrial on the issue. (Amend. Petition, Doc. 6 at 9.)

Respondents argue that these claims were asserted to the Arizona Court of Appeals solely as state law claims and are now procedurally defaulted. (Answer, Doc.

20 at 13-14.)

Petitioner raised a similar claim in his Petition for Review to the Arizona Court of Appeals on his PCR petition. Petitioner asserted that jurors were making "bigoted statements" and expressing opinions on the defendants' guilt. (Exhibit G, Pet. Rev. at 3.) He further asserted that jurors were discussing having seen an attorney carrying in clothing and that it indicated a defendant was in custody. (*Id.* at 5.)

Petitioner argued that he was entitled to a new trial because: under Arizona Rule of Criminal Procedure 18.4 he was entitled to challenge the jury pool, and he had shown that the jury pool had been tainted by these events. In support of this claim, Petitioner quoted *State v. Tison*, 129 Ariz. 526, 535, 633 P.2d 335 (1981), *State v. Doerr*, 193 Ariz. 56, 969 P.2d 1168, 1174 (1998), and *State v. Miller*, 178 Ariz. 555, 874 P.2d 799 (1994). (*Id.* at 7.) However, Petitioner made no reference to any federal authorities or constitutional provisions in asserting this claim.

In his Reply, Petitioner points to his reliance on *Miller* in his Petition for Review, and indicates the *Miller* court's reliance on federal law. (Reply, Doc. 21 at 10.) Respondents have not addressed this reliance.

In recognition of the competence of the state courts to address matters involving federal constitutional law, the federal courts have held that for purposes of exhausting state remedies "a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003). Further, there must generally be an indication that the state case is being cited for its constitutional analysis, or it must be limited to such an analysis. A drive-by-citation of a state case applying federal and state law is not sufficient. "For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues." *Casey v. Moore*, 386 F.3d 896, 912 n. 13 (9th Cir. 2004).

Indeed, *Miller* was an Arizona Supreme Court case plainly resolving a Sixth and

Fourteenth Amendment claim of the denial of an impartial jury, under the United States Constitution. "It is undisputed that a criminal defendant is entitled to be tried by an impartial jury. U.S. Const. amends. VI, XIV; *Turner v. State of Louisiana*, 379 U.S. 466, 471–72, 85 S.Ct. 546, 549, 13 L.Ed.2d 424 (1965)." *Miller*, 178 Ariz. at 557, 875 P.2d at 790.  Thus the *Miller* court explicitly framed the dispute in the context of a federal claim, and relied upon a variety of federal authorities in addressing that defendant's claims that a note given by an excused alternate juror to a sitting juror that the defendant was guilty had denied him his right to an impartial jury.  178 Ariz. at 557, 875 P.2d at 790.

Moreover, the specific proposition of *Miller* identified by Petitioner was the requirement of actual prejudice or a basis for presumed prejudice to support an attack based on the misconduct or bias of the jury.  (Exhibit G, Pet. Rev. at 7.)  Although the *Miller* court discussed this specific proposition by referencing "[i]n Arizona" and citing an Arizona case, the court also quoted *Remmer v. United States*, 347 U.S. 227, 229 (1954), for the proposition that prejudice would be presumed in certain circumstances. *Miller*, 178 Ariz.a at 558, 875 P.3d at 791.  Moreover, in a footnote, the reference to Arizona law was clarified by pointing out that the continuing viability of a presumption of prejudice had been questioned in the Sixth Circuit, but sustained in other circuits and in dissenting opinions in the U.S. Supreme Court.  *Id.* at 559, 875 P.2d  at 792, n.2.

Similarly, in *Tison*, which was cited by Petitioner in his Petition for Review, the Arizona Supreme Court addressed a claim that a defendant had been "deprived of a fair trial guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution because of the pretrial publicity in this matter." 129 Ariz. at 534, 633 P.2d at 343.  The portion of *Tison* quoted by Petitioner, which pertained to a presumption of prejudice, referenced the Arizona  Supreme Court's decision in *State v. Greenawalt*, 128 Ariz.150, 624 P.2d 828 (1981), which in turn discussed a series of U.S. Supreme Court cases which established a presumption of prejudice in cases involving extraordinary publicity.  *Greenawalt*, 128 Ariz. at 164, 624 P.2d at 842.

Similarly, Petitioner's Petition for Review cited *Doerr,* which relied upon a federal constitutional right to an impartial jury. The *Doerr* court also cited *State v. Greenawalt*, 128 Ariz. 150, 167, 624 P.2d 828, 845 (1981), specifically quoting the phrase "An accused has a constitutional right to be tried by a fair and impartial jury." *Doerr*, 193 Ariz. at 61, 969 P.2d at 1173. It is true that the quoted portion of *Greenawalt* referenced both federal and state constitutional rights, in particular "United States Constitution, Amend. VI; Arizona Constitution, Art. 2, § 24." *Greenawalt*, 128 Ariz. at 167, 624 P.2d at 845. However, the *Doerr* court also cited to *Tison* and to federal decisions in *Mach v. Stewart*, 137 F.3d 630, 632-633 (9th Cir. 1997) and *Paschal v. United States*, 306 F.2d 398, 399-400 (5th Cir. 1962).

Thus, by founding his attack on the misconduct of the jurors on *Miller*, *Tison*, and *Doerr*, Petitioner, gave the Arizona Court of Appeals fair notice that he was asserting a federal claim of a denial of a right to due process and a fair jury.

Similarly, with regard to the claim in Ground Three, Petitioner had framed his claim to the PCR court by relying upon *Miller, Tison,* and *Doerr*. (Exhibit S-U, PCR Pet. at 12-13.) His claim in Ground Four included references to the "US Constitution's right of due process, equal protection, right to a fair trial" (*id.* at 14), as well as a reference to "*Remmer v. United States*" a Supreme Court case addressing the prejudicial effect of extrajudicial information given to jurors. *See Remmer v. U.S.*, 347 U.S. 227 (1954).

The Arizona Court of Appeals summarily denied the Petition for Review. (Exhibit H, Order 8/17/12.) In evaluating state court decisions, the federal habeas court looks through summary opinions to the "last reasoned decision." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Here, the last reasoned decision was by the PCR court.

The PCR court addressed the PCR Petition as a whole, concluding that Petitioner had failed to make out a colorable claim "for the reason given in the State's Response." (Exhibit F, M.E. 9/27/10.) The State's only argument with regards to Petitioner's claims

1   concerning the jury was that they "should have been raised and considered on appeal,"

2   and thus were barred from consideration in a PCR proceeding under Ariz. R. Crim. P.

3   32.2(a)(3). (Exhibit S-V, PCR Response at 7-8.)

4        Accordingly, the undersigned concludes that Grounds Two and Four were fairly

5   presented as federal claims to the state court, but were procedurally barred on the basis

6   of Arizona's waiver bar under Ariz. R. Crim. P. 32.2(a)(3).   Rule 32.2(a)(3) has been

7   found to be an independent and adequate state ground.  *See Hurles v. Ryan,* 752 F.3d

8   768,  (9th Cir. 5/16/14).[12]

9

10       **(3) Ground Three – Ineffectiveness of Appellate Counsel** – In his Ground

11  Three, Petitioner argues appellate counsel was ineffective, in violation of Petitioner's

12  due process rights.

13       As conceded by Petitioner (Reply, Doc. 21 at 12),Petitioner did not assert such a

14  claim in his state Petition for Review. To be sure, Petitioner complained in his state

15  Petition for Review that appellate counsel had filed an *Anders* brief, and Petitioner was

16  unable to supplement it and counsel offered limited assistance.   (Exhibit G at 6.)

17  However, Petitioner did not assert a claim of ineffective assistance of counsel in

18  connection with these allegations, nor did he cite any federal authority or constitutional

19  provisions relating to ineffective assistance of counsel.   While the petitioner need not

20  recite "book and verse on the federal constitution," *Picard v. Connor*, 404 U.S. 270, 277-

21  78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not

22  enough that all the facts necessary to support the federal claim were before the state

23  courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459

24  U.S. 4, 6 (1982)(*per curiam*).

25       Accordingly, the undersigned finds that Petitioner did not fairly present the

26

27  [12] If, on the other hand, this Court were to conclude that the federal claims in Grounds Two and Four were not fairly presented as federal claims in Petitioner's PCR proceeding, the claims would now be procedurally defaulted, and barred from habeas

28  review.

ineffective assistance of appellate counsel claim raised in Ground One to the Arizona Court of Appeals in his PCR Petition for Review.

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals did observe that appellate counsel had filed an *Anders* brief.  (Exhibit B, Mem. Dec. at 2.) However, the court undertook no analysis of the propriety of appellate counsel's representation. (*See generally* Exhibit B, Mem. Dec.)  Petitioner points to no evidence that the Arizona Court of Appeals actually considered the effectiveness of appellate counsel.  Moreover, such a claim was arguably not ripe until after the ruling of the Arizona Court of Appeals, which is when prejudice would have accrued.  Further, Arizona has arguably precluded its appellate courts from considering ineffective assistance claims.  *See State v. Spreitz*, 202 Ariz. 1, 3, 39 P.3d 525, 527 (2002) ("Accordingly, we reiterate that ineffective assistance of counsel claims are to be brought in Rule 32 proceedings. Any such claims improvidently raised in a direct appeal, henceforth, will not be addressed by appellate courts regardless of merit.").  Accordingly, the undersigned finds that the Arizona Court of Appeals did not consider the issue *sua sponte* on direct appeal.

Consequently, Petitioner's state remedies on this claim were not properly exhausted, and those remedies are now procedurally defaulted.

**(4)  Ground Five – Insufficient Evidence of Premeditation** – In his Ground Five, Petitioner argue that his due process rights were violated when he was convicted on insufficient evidence to prove premeditation, and when his exculpatory statements were redacted.  (Amend. Pet., Doc. 6 at 74, *et seq*.)  Petitioner argues that his statements to police were redacted by the court to eliminate his exculpatory statements that he only intended to rob the victim, and the shooting did not occur until the victim reached for a gun.  (*Id.* at 74-75.)   He further argues that the evidence of premeditation was insufficient because the only evidence was of an intent to rob, and the homicide was the result of a "sudden quarrel or heat of passion" when the victim reached for the gun.  (*Id.*

at 75-76.)

Petitioner argues this claim was raised in his PCR Petition for Review.  (Reply, Doc. 21 at 13.)  Indeed, Petitioner raised a similar claim in his Petition for Review in his PCR proceeding, arguing there was "insufficient evidence to prove premeditation." (Exhibit G, Pet. Rev. at 9.)  He had argued that his statements had been improperly redacted because "the excised material was exculpatory as to premeditated murder."  (*Id.* at 4.)  However, Petitioner made no reference to any federal constitutional provisions or principles, and cited no authority in support of his claim.  At best, in the succeeding paragraph to that argument, he made a reference to a "right to a fair and impartial trial." (*Id.*)  However, such general conclusions are insufficient to fairly raise a federal constitutional claim.  "Even where a petitioner argues that an error deprived him of a 'fair trial' or the 'right to present a defense,' unless the petitioner clearly alerts the court that he is alleging a specific federal constitutional violation, the petitioner has not fairly presented the claim."  *Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004).

Accordingly, the undersigned finds that Petitioner did not fairly present the federal claim raised in Ground Five to the Arizona Court of Appeals in his PCR Petition for Review.

On direct appeal, the Arizona Court of Appeals reviewed the evidence at trial, and concluded that the "State presented both direct and circumstantial evidence sufficient to allow the jury to convict."  (Exhibit B, Mem. Dec. at 6.)  There is no indication that such conclusion was made on the basis of federal law.

Moreover, there is no indication that the Arizona Court of Appeals specifically evaluated whether the evidence was insufficient as a result of the exclusion of redacted portions of the exculpatory statements.

Further, the Arizona Court of Appeals specifically observed that Petitioner had been convicted of "first-degree murder in violation of Arizona Revised Statues ("A.R.S.") section 13-1105(A)(2)."  (Exhibit B, Mem. Dec. at 4.)  Ariz. Rev. Stat. § 13-1105(A) defines "first degree murder," and identifies three different circumstances

28

which qualify a homicide as first degree murder: (1) premeditation to cause death; (2) occurring "in the course of and furtherance of" certain enumerated offenses, including burglary and robbery; and (3) homicide of a law enforcement officer in the line of duty. Petitioner was convicted of the second, Ariz. Rev. Stat. § 13-1105(A)(2), Arizona's felony-murder statute, which did not require premeditation or any other specific mental intent to commit the homicide.

> In the typical case of felony-murder, there is no malice in "fact" with respect to the homicide; the malice is supplied by the "law". There is an intended felony and an unintended homicide. The malice which plays a part in the commission of the felony is transferred by the law to the homicide. As a result of the fictional transfer, the homicide is deemed committed with malice; and a homicide with malice is, by definition, common-law murder.

2 Wharton's Criminal Law § 147 (15th ed.)

Indeed, Ariz. Rev. Stat. § 13-1105(B) provides that "[h]omicide, as prescribed in subsection A, paragraph 2 of this section, requires no specific mental state other than what is required for the commission of any of the enumerated felonies." Thus, "[f]elony murder requires no specific mental state other than that which is required for the commission of any of the felonies enumerated in the statute." *State v. Woratzeck*, 134 Ariz. 452, 455, 657 P.2d 865, 868 (1982).

Petitioner does not deny that he intended to commit the predicate felonies of burglary and robbery. Indeed, he admits that "[t]he State's evidence show[s] that a robbery was intended but not a murder." (Reply Doc, 21 at 15.) "[T]he *mens rea* necessary to satisfy the premeditation element of first-degree murder is supplied by the specific intent required for the felony." *State v. McLoughlin*, 139 Ariz. 481, 485-86, 679 P.2d 504, 508-09 (1984).

Petitioner contends that the homicide arose out of a sudden quarrel. The Arizona statutes provide that "an act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion." Ariz. Rev. Stat. § 13-1101(1). Separated from the underlying felonies, e.g. burglary and robbery, this might indicate that Petitioner was only guilty of second degree (intentional but not premeditated) murder under Ariz. Rev.

Stat. § 13-1104. However, because the intent relevant to a felony murder conviction arises from the underlying felony, Petitioner would have to show that the burglary and robbery arose out of a sudden quarrel in order to escape liability for felony murder.  It is irrelevant to Petitioner's conviction of felony murder that the ensuing homicide may have occurred from a sudden quarrel during the commission of the intended burglary and robbery.[13]

In sum, Arizona law simply did not require evidence of Petitioner's premeditation nor indeed any intent to commit a homicide, but only evidence of the intent to commit the underlying felony. Thus, the Arizona Court of Appeals would not have had occasion to consider whether there was insufficient evidence of premeditation to commit the murder, despite their conclusion that the evidence was sufficient to convict.

Accordingly, the undersigned finds that the Arizona Court of Appeals did not consider Petitioner's premeditation issue *sua sponte* on direct appeal.

Consequently, Petitioner's state remedies on this claim were not properly exhausted, and those remedies are now procedurally defaulted.

**e.  Summary Re Exhaustion** – Based upon the foregoing, the undersigned concludes that Petitioner has procedurally defaulted on: (1) Ground One (Severance); (2) Ground Three (ineffective assistance); and (3) Ground Five (premeditation).

And, based on the foregoing, the undersigned concludes that Petitioner was procedurally barred on independent and adequate state grounds from asserting the claims in Grounds Two and Four (juror misconduct, etc.).

## B.  CAUSE AND PREJUDICE

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient

---

[13] For the same reasons, Ground Five would in any event be without merit.

1    to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

2           "Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119,

3    1123 (1991). "Because of the wide variety of contexts in which a procedural default can

4    occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v.*

5    *Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert.*

6    *denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause

7    should ordinarily turn on some objective factor external to petitioner, for instance:

8                    ... a showing that the factual or legal basis for a claim was not
                     reasonably available to counsel, or that "some interference by
9                    officials", made compliance impracticable, would constitute cause
                     under this standard.
10
      *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).
11
12          Petitioner argues that this Court should find cause to excuse his procedural

13   defaults based on (1) his diligence, his untrained, *pro se* status, and appellate counsel's

14   failure to brief his claims; and (2) this Court's direction that Petitioner file an amended

15   habeas petition identifying the constitutional violations associated with his claims.[14]

16          Petitioner's *pro se* untrained status does not qualify as cause.  The exhaustion

17   requirement is equally applicable to *pro se* litigants, *Harmon v. Barton*, 894 F.2d 1268,

18   1274 (11th Cir. 1990); *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 908

19   (9th Cir. 1986), whether literate and assisted by "jailhouse lawyers", *Tacho*, 862 F.2d at

20   1381; illiterate and unaided, *Hughes*, 800 F.2d at 909, or non-English speaking.  *Vasquez*

21   *v. Lockhart*, 867 F.2d 1056, 1058 (9th Cir. 1988), cert. denied, 490 U.S. 1100 (1989).

22          Ineffective assistance of counsel may constitute cause for failing to properly

23   exhaust claims in state courts and excuse procedural default.  *Ortiz v. Stewart*, 149 F.3d

24   923, 932, (9th Cir. 1998).    However, "[t]o constitute cause for procedural default of a

25   federal habeas claim, the constitutional claim of ineffective assistance of counsel must

26   _____

27   [14] With regard to Ground Three, Petitioner candidly acknowledges his failure to exhaust
     and argues his lack of access to a copy of his Petition for Review in his PCR proceeding
     to ascertain whether the claim had been presented. (Reply, Doc. 21 at 12.) The
28   undersigned does not construe this to be an assertion of cause for the failure to exhaust,
     but cause for presenting a claim to this Court which was known to be unexhausted.

first have been presented to the state courts as an independent claim." *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003).    Petitioner concedes, and the undersigned has determined in connection with Ground Three, that he has not presented any claim of ineffective assistance of appellate counsel to the Arizona Court of Appeals.  Such a claim is itself now procedurally defaulted, and thus cannot constitute cause to excuse his procedural defaults.

Finally, Petitioner points to the fact that this Court dismissed his original habeas petition, stating that "Petitioner's claims do not describe which Constitutional rights, laws, or treaties of the United States were violated by his conviction and sentence." (Reply, Doc. 21 at 9; Order 1/31/13 at 2.)  It appears that Petitioner contends that he was thus prompted to assert unexhausted constitutional claims, where he had previously presented only exhausted state law claims.  To the extent that Petitioner asserts that this establishes cause to excuse his procedural defaults of his constitutional claims, the argument is without merit.  As the Court observed in dismissing the original Petition, this habeas court cannot review Petitioner's state law claims, and as discussed hereinabove, it ordinarily cannot review procedurally defaulted claims.   That this may result in Petitioner being denied any relief in this proceeding may be unfortunate for Petitioner, but is not a mere by-product of the exhaustion requirement, but is its very intent.  *See Rose v. Lundy*, 455 U.S. 509, 518-519 (1982) (discussing the purpose of the exhaustion doctrine).

Based upon the foregoing, the undersigned concludes that Petitioner has failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

### C.  ACTUAL INNOCENCE AS CAUSE

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty.  *Id*. at 329.  This standard is referred to as the "*Schlup* gateway*." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Here, Petitioner makes no overt assertion of actual innocence.  At best, Petitioner points to the purported insufficient evidence of premeditation to commit the homicide.  However, a finding of "actual innocence" is not to be based upon a finding that insufficient evidence to support the charge was presented at trial, but rather upon affirmative evidence of innocence.  *See U.S. v. Ratigan*, 351 F.3d 957 (9th Cir. 2003) (lack of proof of FDIC insurance in a federal bank robbery case, without evidence that insurance did not exist, not sufficient to establish actual innocence).

Moreover, as discussed hereinabove in connection with Petitioner's Ground Five, evidence of the premeditation of the homicide was not necessary for the jury to find

33

Petitioner guilty of the felony murder for which he was convicted.

Thus, Petitioner fails to make a showing that no reasonable juror would have found him guilty based on his explanation for his possession of the vehicle.  Accordingly his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being  resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in

1    its procedural ruling." *Id.*

2      **Standard Not Met** - Assuming the recommendations herein are followed in the

3 district court's judgment, that decision will be in on procedural grounds.   Under the

4 reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it

5 debatable whether the district court was correct in its procedural ruling."

6      Accordingly, to the extent that the Court adopts this Report & Recommendation

7 as to the Petition, a certificate of appealability should be denied.

8

9                  **V.  RECOMMENDATION**

10      **IT IS THEREFORE RECOMMENDED** that the Petitioner's Amended Petition

11 for Writ of Habeas Corpus, filed February 25, 2013 (Doc.  6) be **DISMISSED WITH**

12 **PREJUDICE**.

13      **IT IS FURTHER RECOMMENDED** that, to the extent the foregoing

14 recommendations are adopted in the District Court's order, a Certificate of Appealability

15 be **DENIED**.

16

17              **VI. EFFECT OF RECOMMENDATION**

18      This recommendation is not an order that is immediately appealable to the Ninth

19 Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules*

20 *of Appellate Procedure*, should not be filed until entry of the district court's judgment.

21      However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties

22 shall have fourteen (14) days from the date of service of a copy of this recommendation

23 within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules

24 Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days

25 within which to file a response to the objections.  Failure to timely file objections to any

26 findings or recommendations of the Magistrate Judge will be considered a waiver of a

27 party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*,

28 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's

right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: November 24, 2014

12-2525r RR 14 01 28 on HC.docx

James F. Metcalf
United States Magistrate Judge

36